Town? May it please the court, my name is Autumn Town, I represent appellant Nemesis Bates. Mr. Bates was convicted at trial of essentially a murder-for-hire scheme for which he is currently serving a life sentence. We've raised two issues in his brief but I would like to primarily address the Messiah issue. At trial in his case, a jailhouse snitch, Anthony Commodore, testified as to a supposed confession that Mr. Bates made. This confession was obtained and then introduced at trial in violation of Mr. Bates' Fifth and Sixth Amendment rights as well as in violation of the test set out in Messiah v. United States. Unfortunately, I'm also somewhat hamstrung in arguing that issue to this trial court on this matter. When this issue arose in Commodore's... You're somewhat hamstrung because there's no request for a hearing. Well, Your Honor, at trial when Mr. Commodore was testifying to this, the defense attorney immediately stood up and objected. They approached the bench and they had a conversation about that and trial counsel Mr. Strasser argued that he had never heard any of this information before. The dates that Commodore provided in his testimony to the prosecution and then again in his testimony to Strasser as to when he first obtained this confession from Mr. Bates versus when he actually met with the government was confusing. And Mr. Strasser noted this, but he was prevented from conducting a full hearing even though he was allowed, the court noted you will have full cross-examination. It's in front of a seated jury, a jury that's there to find guilt as... Is there a case law that says it's an obligation to respond to the district judge when this comes up to have a messiah hearing? Well, Your Honor, if we are going to make the request on trial counsel that he actually has to use the word messiah, I believe that his objection and the discussion at the bench was sufficient to trigger that. I don't think he needed to name a messiah. There are too many issues that come up. I can't remember the cases, but to ask for an evidentiary hearing, he doesn't need a label beyond that and there was no request for an evidentiary hearing. And, Your Honor, if the courts find that there was no request for an evidentiary hearing and that is the fault of the trial counsel, then I would also argue that that's ineffective assistance of counsel, which is clear from the record. I know that's normally a 2255 issue, but it can also be considered on direct appeal if it is clear from the record. But I would argue that his objection and the discussion that was held at the bench could be interpreted as a request for hearing, which was denied by the trial court, who said, no, your remedy here is simply full cross-examination. It seemed to be a request for a ruling not to allow the testimony and not a request for an evidentiary hearing. And I would agree with that, Judge. There definitely was a request not to allow the testimony, but then I think after the judge said, I'm going to go ahead and allow it, you just have to cross on it. I think at that point, that was when Mr. Strasser's additional comments would have triggered the request for the hearing. What are the factual triggers here for the district judge? What was said at the time that would have indicated some reasonable suspicion about this cellmate? Well, the first was that Mr. Commodore testified that he had met Mr. Bates over three separate times, 2013, again in May of 2014, and then May of 2015. Leading up to the trial, which occurred in June of 2015. He testified during the government's direct that we were in the cell together, he made these comments. I happen to have this old newspaper that randomly had a picture on it of your co-defendant. And then on cross-examination, Mr. Strasser was trying to clarify with him, because it's relatively unclear from his testimony the exact order in which things happened. And Mr. Commodore said, well, I met with the government on May 1st. And Mr. Strasser said, well, when did you have this conversation when he confessed to you that he hired Mooney, Walter Porter? Well, just recently. And if today's Tuesday, it must have been last week or the week before. So he established that he had a meeting with government agents in May 1st of 2015. And sometime after that, obtained this supposed confession from Mr. Bates. And it was discussed at the bench conference that he had been part of a plea agreement since 2013, a cooperation agreement. And we will acknowledge, as the government has pointed out in its brief, it was a separate plea agreement. It wasn't specific to Mr. Bates's case. And I believe that was the issue in Kutnow, where they said it's not the same thing, because it's not a plea agreement relative to this case. Was that in the Hankin case? I'm sorry? Was that in the Hankin case, the separate plea agreement? Your Honor, I'm not 100% sure. The Hankin case was referenced up at the bench, but because it was a sealed separate matter, I don't know specifically. I'm going to assume so, because that was mentioned. But he was under this cooperation agreement. And he testified honestly, you know, I'm hoping for some consideration here. And he went in and met with the agents. And unfortunately, because there was no hearing, we don't know who the agents were. Now, the government did make a statement at the bench conference. We instructed him not to ask any questions. And that's fine, but we don't know what the agents instructed him. And it's arguable, because Walter Porter was connected to Tally Hankin, and that was a case that Mr. Commodore was working on, that it's the same agents. So, of course, they are going to talk about this. And Mr. Commodore admits that when he learned that he didn't reach out to the government after he got this confession, because Mr. Strasser, trial counsel, asks him about that. He says, they came to me. The agents asked me about it. Strasser says, did you tell your attorney, hey, reach out to them, I've got some information. He said, no, that's not how it worked. So, it's clear that he is being questioned about this matter. This is not something that he just gets on his own and then offers up. And the Sixth Amendment right to counsel had already clearly attached. When Mr. Commodore was speaking with Bates, it was after his meeting with the government. And there were some cases that we cited in our brief, where even if a government employee said, don't go in there and ask any questions, they still found to be a Messiah violation, depending on the actions of that person. And whether or not they have submitted to the control of the government, which we would argue Commodore clearly had in this case. But didn't Commodore seek out the government? Didn't he say, I have some information? Well, Your Honor. The agents didn't go to him, initially. And that's something that's a little confusing from the record. And I think that's where an evidentiary hearing would have come in handy, because I would be able to answer that question specifically. At one point, he says, I talked to the government. When he's being cross-examined by defense counsel, he says, the defense counsel says, did you reach out to your attorney and tell them I have information? No. No, that's not how it worked. So the agents came to you. He was asking me, did I know Mr. Bates? Did I know about the case? So I would argue that he didn't reach out to the government. They reached out to him. In addition, it's arguable that they told him, and again, we don't know, because there was no hearing and they weren't able to question any of the agents, keep an eye out, listen, see what you can find out, and let us know. And then you have the issue of the newspaper, which I mentioned earlier. It's a little strange that he's holding on to this newspaper from 2012, and it just so happens to have a picture of Mr. Bates' co-conspirator on the cover, and he just so happens to show it to Mr. Bates, which then triggers conversation. I would argue that that was definitely a way for him to deliberately elicit and start a conversation to try and get some of this information. And again, because the agents weren't questioned, we don't know who the agents were, there wasn't a full hearing on this matter, we weren't able to get that information. And even though defense counsel was able to cross-examine Mr. Commodore at trial, he was hampered by the fact that he was sitting in front of a jury, which is a completely different determination of guilt than a motion to suppress hearing. Was he asked how he happened to have that newspaper with him? No, Your Honor. He made a comment about, I knew the people on it, so I just had it. But that was never specifically asked, how did you get that? Or how long have you had it? Or why did you have it? What was the time period between the newspaper and the lockup? The newspaper was 2012, if I remember, October 2012. And then the specific confession which, according to Commodore's testimony on Cross, sounds like that came sometime after May 1, 2015. Didn't Commodore say he knew Bates and that's why he had, or knew somebody in the newspaper and that's why he had kept it? Yes, Your Honor. He did say that. He knew somebody on it. Knew Bates or knew the person who was pictured or? If I'm reading the transcripts correctly, I believe Walter Porter was on the cover of the newspaper and he said that he knew of Walter Porter. And he then said, you know, I know of this dude, he's a bad dude, do you know him? And at that point, Mr. Bates then supposedly started talking about, yes, I know him, and then that's where part of the confession came from. And Porter was one of the shooters in the Hankton case. Yes, Your Honor. And then also a co-defendant in this matter that was severed out. You said in your brief that Commodore sought information from Bates in the hopes of receiving a benefit. What evidence do you base the allegation that he was hoping to receive a benefit on? Other than the testimony that he gave at trial. Unfortunately, I also can't answer that question because, again, there wasn't a full hearing on it. Well, you made the statement, so in your brief. Yes, Your Honor. He did say at trial, yes, I'm hoping for, you know, consideration because he was hoping for his own jail sentence. And that was something that the government argued in their response brief was that, because we had cited Henry, which is the facts are pretty similar to Mr. Bates' case, but for the fact that the informant in the Henry case was a paid informant. And the government noted that and said, this guy's not paid, it's not the same thing. Mr. Commodore was hoping for time off of his jail sentence, which is arguably worth a lot more than any money that he's going to receive. And so narrowing it down to actual physical cash, I think, is a little unfair because it's any benefit that the informant hoped to receive or expected to receive or was told he would receive. And so if he is testifying in the hopes of having time worked off of his sentence, that's clearly a benefit. And so that would be one reason that would make him a government agent. And the second would be if he was either operating under instructions from the state or submitted to control of the state. Arguably, he'd been in control of the state since 2013, since this cooperation agreement started. And I am unaware of the specifics of the cooperation agreement, so I can't tell this court if it was relative to specifically one case or if it was to, hey, anytime you hear anything, let us know, see what information you can find out and let us know. And I would also argue that if that is the case, see what information you can find out and let us know, that's instructions from the government to go in there and see what information you can elicit, which is clearly something that's mentioned under Messiah as one of the prongs for the test. And based on all of that, the fact that he had a cooperation agreement, the fact that it came up for the first time in trial in front of a jury, not in front of the court alone where they could have a proper hearing on this, that he had met with the government, that he had then gone back to Mr. Bates and gotten a confession. The timing is suspicious, and it was not able to be fully explored because he was in the middle of a jury trial. And I understand that the district court had considered this as part of the motion for new trial. But as Judge Southwick asked both the two prior arguments before me, the judge was limited only with what was placed in front of her. She did not get the opportunity to listen to any of the agents. There was a statement from the prosecution at that Benz conference. We did instruct him to do that, but that's as to the prosecution. We don't know if that's as to the agents who were working with him on that case, on other cases. And so the judge was limited by a very small amount of information, as unfortunately as I am and as this court is. And I would argue that that's one of the fundamental errors is that without a hearing, it's difficult to even get into the Messiah analysis because we don't have enough information. The information we do have, however, shows, if we make a factual determination of it, that Commodore was acting as a government agent. He obtained this confession in violation of Mr. Bates' rights. And I'm asking this court to reverse that and grant him a new trial. In another way to look at this evidence, but since it is so obscure what happened, is that though there might be some suspicions, there's no evidence of this complicity that you would allege or are alleging existed. There is sufficient evidence to uphold the conviction. And the basic point you're making is something for 2255. Meaning as to the ineffective assistance of counsel that he didn't request a hearing? Right. You're right. I was a bit obscure myself. That's what I meant. Your Honor, I would argue that there is enough evidence on the Messiah claim. You know, it's kind of like a DNA test. If you get 11 alleles, you're pretty certain it's the guy, but you really want the 14. I believe that there's enough that was brought out, given the timing, the statements that Commodore made at trial, to say, yes, there was a Messiah violation. But it would be a lot better if we could have had a hearing and I could make additional argument on that. But if this Court says, yes, there was an error, but it's trial counsel's error, then arguably I would say you can also find IAC, even on direct appeal, if it's clear from the record. All right. Thank you, Ms. Town. You've saved time for rebuttal. Mr. Borton. Thank you. Good morning, Your Honors. May it please the Court, Kevin Borton for the government, along with me is Liz Privatero, who was trial counsel in this matter. Your Honor, as the Supreme Court has stated, the primary concern of the Messiah line of cases is government agents and the use of secret interrogation techniques that become the functional equivalent of direct police interrogation. Those concerns and those facts on this case are not present here, because as Judge Vance found in her Rule 29 decision, there is no evidence proving that Commodore was an agent of the government when Bates made incriminating statements to him. And I want to clarify a couple of things here. Judge Southwick, you asked about the timeline of events, I believe, you know, how long before the confession and everything else. I think counsel, and I obviously have a different opinion of this, believe opposing counsel is kind of put forth in the reply brief and statements a situation where it sounds like after the May 1st meeting is really where the confession occurred. And I understand that interpretation based on the way Bates testified, but I don't think that's a fair interpretation of Commodore's testimony and the finding that Judge Vance made. The testimony that came out from Commodore, which is all between 1346 and 1366 of the record, not very much testimony at all, Commodore testified that he and Bates met each other in jail in St. Tammany in April 2013 while they were both awaiting cases. They were in the same dorm the next year in 2014, and they began talking about their cases. The newspaper discussion comes up kind of in that context right there in the testimony between pages 1349 and 1350, and Commodore continues to say that Bates told him, I had a little situation, and pointing to Walter Porter, who was in the newspaper, he took care of that business for me. Down the line, they told a little more. Well, counsel, there's no evidence, is there, that Commodore came to the jail with a collection of reading material? Well, the only thing he had was his newspaper, correct? That's the only thing that's from the record, Your Honor. Well, there was no hearing, so there's no further record of what he brought. They could have developed this on the face of it. That is as suspicious as it can be. And you have an explanation for it, and we're hearing it, but whether we can deal with it now or not, or we even should, is, of course, the question that's in front of us. Well, I think there's two of them, and part of it is actually an answer to Judge Clement's question as well to clarify Mr. Commodore's ability with his own separate agreement. He had pleaded guilty in his own separate case, and his plea agreement is actually in the record at pages 405 to 410 in the cooperation agreements in 408. But he did assist on the Telly-Hankton case and actually testified in that case in court. That newspaper with Walter Porter and Telly-Hankton, that's the newspaper that he's talking about. So it's something he was familiar with, those people, and I think it was actually 1350 or 1352 of the record where he mentions he knew that people in there. But more important in my opinion for it and for the timeline in the absence of a hearing is what Judge Vance, the district court, said about this, because she made this finding. And on page 473 of her order, she kind of goes over the timeline for everybody and says, Commodore and Bates were incarcerated together. Commodore testified that he and Bates discussed the crimes for which they were both incarcerated. At some point during these discussions, Commodore showed Bates a newspaper article referencing Walter Porter's alleged murders. Commodore testified that Bates stated that he had hired Porter to take care of business for him. After these discussions, Commodore met with the government for the first time related to Bates' case on May 1, 2015 and shared Bates' statements with them. Until this point, Commodore and the government had never spoken about Bates' case. So that's what the district court surmised and found from Commodore's statements. And so that's a question that she has been able to answer, and the district court here, Judge Southwick, again, different from what I'm saying and anything else, but the district court had the opportunity to observe Commodore's testimony, listen to the testimony, receive it in the context to which it was given, and analyze it with the benefit of arguments from counsel in the time of trial and post-trial briefing in the post-verdict motions. And she made that decision, and there's nothing in the record that Bates can point to to show that that finding is clearly erroneous or equates to an abuse of discretion. That's part of the complaint, is how the record wasn't developed. If counsel for Bates had asked for a hearing on this issue, would he have been entitled? I don't think he would have been entitled to it, and there's a few reasons for that. One, in any event, Judge Vance, in the matter, said, go ahead, cross into this. So he had an opportunity to look at that. Also, Federal agents testified in this trial, too, and there was a further opportunity to develop testimony on that point. And while opposing counsel is talking about you were in front of a jury and it may have looked bad, this could have simply been coming through as cross-examination, impeachment by omission. So there was a way to do this anyway. But the other reason I don't think it would have been entitled automatically to the Maasai hearing is that, again, the elicitation was not there. There was nothing there to support a showing of agency. And that's the question here where I think also there's a difference to act. While opposing counsel looks to Henry, this case really isn't Henry. As this Court has stated, the Henry and Maasai and Moulton cases were really cases where agency was already established. The question was whether the elicitation really violated the Sixth Amendment. Here, this case is more like Kutno, where there was not a prima facie case shown of agency. Commodore testified that he had the information and it was given to the agents at the May 1st meeting. And after that, as Judge Vance found, the timeline showed nothing else. No evidence was uncovered to show it. Now, had there been a Maasai hearing, Judge Southwick, obviously could have been, maybe more evidence would have been there, but there's nothing indicating that the testimony would have changed. In fact, the statements of the attorneys at the bench conference negated the need for anything. Defense counsel at that point, going back, again, 1349, 50 of the record, where opposing counsel brought this up and told the AUSA, you sent him back into the jail, which is one of the claims. The AUSA clearly said, we did not do that. I didn't send him anywhere. There's an allegation that the agents instructed and coached Commodore in what to say. The AUSA, again at the bench, said clearly, you can elicit this. We did not tell him to ask anything. In fact, we told him not to ask any questions. So there was nothing before the Court that would have actually satisfied the need for a hearing. And because of that, there's no need to do anything else here. The question in this case is agency, and as I said, this is not Hill in which the agent was always kept looking for information and went to a paid informant who had been paid for a year, was paid on a contingency basis, and said, go into the jail, don't ask questions, but go into the jail and listen to anything the Federal prisoners say, especially the defendant in that case, Henry. That's not what you have here. Here the only evidence in the record is that there was an instruction not to ask questions, and instead it is just like Kutno in which the defendant got the information and it was brought to the government's attention at the May 1st interview. In light of these facts, there's no agency here, and because there's no agency, there cannot be a Messiah violation. As the bench discussion and the direct testimony and the cross-examination on this matter showed, the record evidence supports the district court's conclusion that there was no evidence that Commodore was a government agent acting at the government's behest when that happened. But even if there is an issue, Your Honor, there's no reason to clarify anything here because the record speaks for itself. Now, the ineffective assistance of counsel claim that counsel mentioned right here, obviously that's not before this Court right now, and I certainly don't think there's enough on the record of this Court that would clearly show ineffective assistance, nor do I think it is ineffective because I think the questions that Mr. Straus or defense counsel at trial elicited in the cross-examination showed even more that there was no violation anyway, so there was no reason to go further. But even if this Court found a problem with the testimony, and even if this Court thought Mr. Commodore's testimony should be excluded or for whatever reason, this is another reason not to send it back for any remand for clarification, Judge Seilthuk, because the other evidence in this matter was overwhelming. So any admission of this testimony, which is less than 20 pages in a four-day trial with 21 other witnesses by the government, any error is harmless by letting it in. In this case, the jury heard detailed evidence from one of the hitmen in this case, Aaron Smith. Aaron Smith walked the jury through exactly what happened, through every step, every communication he had with Bates. Every time Bates said he needed business taken care of for $20,000. He talked about the use of the phones, how, and this was corroborated by cell phone records, all the times that Smith contacted Bates by phone, whether it was a text, and there were several text messages and several communications between the phones. He even talked about how Smith, how Bates used Smith's phone to pull up an iPhone picture of the victim in this matter, Tiger, so Smith would know who he was. So this was very detailed testimony by one of the co-conspirators in this case. But Smith, while Smith's testimony alone satisfied that, it was corroborated by cell phone records, by bank records showing a $10,000 deposit into and out of Bates' account, and by car rental documents. In addition to the testimony of Smith, the jury heard the testimony of Bates' girlfriend at the time, Denise Hancock, who testified that she was there when he got, when Bates got the call from Smith telling him that Tiger had been killed. She talked about his demeanor and talked about the next day and told the jury how Smith said, I just couldn't let it go that Tiger stole from me. They also heard the testimony of Keith Hamilton, who had known Bates for a long time, saw Porter and Smith dealing with Bates every day at the car wash for months after the car wash. They also heard from Bates himself, because Bates testified, and they rejected that testimony, even though Bates blamed almost everybody else and accused everyone of lying. They also heard that Bates gave statements to Jefferson Parish authorities and Captain Marlon DeFillo, but not once did he claim he was being extorted, as he did at trial or as he does now. Not once did he tell them the names of Porter and Smith as the killers, as he said he knows now. And also they finally heard from Hancock and Hamilton that Bates admitted he did this, admitted he hired someone to kill Tiger and told Hamilton, I'm involved, it was a hit. So in light of all that overwhelming evidence, from 21 witnesses aside from Commodore, there is no harm even if there was a Messiah violation. Any error in introducing Commodore's testimony is harmless beyond a reasonable doubt. The only other questions relating to the evidence that opposing counsel really brings up all relate with Bates' opinion of the credibility of the government witnesses. But as this Court certainly knows, credibility is solely in the province of the jury, and there was nothing about this testimony from any of these witnesses that was implausible, incredible, or just impossible. The jury is the final decider of credibility, and the evidence in this case supported their decision. If there are no other questions, Your Honors, I'll just conclude by saying this is not a case where the government acted and instructed the jailhouse informant to do anything, much less to ask any questions of Bates. It is a case where the record supports the district court's decision that there was no agency in this case at all, and therefore no Messiah violation, and it's a case where the record evidence and the facts presented at trial establish that Bates is guilty for hiring Porter and Smith to kill Tiger in this matter. Mr. Boitman, I have a question. Yes, Your Honor. Are you related to the former Assistant U.S. Attorney Boitman in New Orleans? Yes, Your Honor. He's either my second cousin or my first cousin, once removed. I don't know what it is, and we crossed over at the office for about six months before he retired. All right. Thank you, Mr. Boitman. Thank you, Your Honor. Ms. Town, you save time for rebuttal. The government argues that there's nothing in the record to show that there was an agency relationship, and that's somewhat true. There isn't anything in the record because no hearing was ever conducted. The government asks this Court that it should look at Kutnow as being more illustrative of the situation here. If that's the case, there was a Messiah hearing in Kutnow. After that hearing is when they determined that there wasn't an agency relationship. What do you do with the argument that any error was harmless because of the overwhelming nature of the evidence and 21 witnesses and admissions that Bates made to other people? Well, Your Honor, I would respectfully disagree with the government's position that it's overwhelming evidence. Of those 21 witnesses, only the four that the government mentioned, Aaron Smith, Anthony Commodore, Denise Hancock, and Keith Hamilton, had anything to say about Mr. Bates. Everyone else testified about either investigation that was done in the case, which didn't produce any physical evidence, or it was the coroner who did the autopsy. It was someone who worked at Mercedes-Benz who said, yes, I remember seeing Mr. Bates driving a Mercedes-Benz around. What about bank account transactions, $10,000, $20,000, whatever it was? Your Honor, the $10,000, that was explained by a defense witness as part of a car transaction, which Mr. Bates often facilitated due to the fact that he owned the car wash and dealt with, I guess, luxury vehicles sometimes. So there is a plausible definition, a plausible explanation for that. But ---- What about the Mr. Bortman referred to a hitman who gave lots of details? Aaron Smith, who was the co-defendant who testified because they took the death penalty off the table. He also admitted at trial that he had several convictions, a history of drug use, that he had forgotten information in his factual basis, that he had provided incorrect information to the government and went back and changed it, that he lied to ---- about Mr. Bates in a June 2011 FBI interview, that he didn't know anything about the jewelry burglary before the murder, but that was then disputed by additional information, admitted that he would lie to save himself, and also admitted that it was only in preparation for trial that this jogged his memory. So we would argue that, yes, this Court can't find that testimony to be credible. And with one of the testifiers against him, Anthony Commodore's testimony, out, then that leaves Denise Hancock, the ex-girlfriend who was so obsessed with Mr. Bates, she keyed his car within the first two weeks that she met him because he was seeing another woman. And then Keith Hamilton, who was his ex-lover, who had a $500,000 insurance policy on him, who later found out that Walter Porter was responsible for murdering Keith Hamilton's longtime lover and blamed Mr. Bates for that, and had been ---- had had the police called on him several times by Mr. Bates because he became obsessive with who Mr. Bates was dating. So the four witnesses of the 21 who actually provided information on this all had their own motives, all had their own reasons for being up there, and their testimony is not believable. The text messages and telephone calls that are referenced, they don't actually have any of those. They have cell phone records showing things occurred. They don't know the subject of it. They don't have recordings of any of it. So it's speculation as to what was contained therein. And when they say that the timeline in the record is completely clear as to Anthony Commodore, it's not. On record page 1357, he's being crossed by defense counsel who says, when you had this conversation with Nemo, wherein Nemo, you say, basically told you that he had hired this guy Mooney, when did you have that conversation? Commodore replies, recently. The recent conversation was today is Tuesday. That was last week, the week before last, before he got moved, which arguably is after the May 1st, 2015 date. But again, we don't know for sure because no hearing occurred. The timeline is not clear in the record. All of the evidence was not put forth before the trial, the district judge. And unfortunately, it's an unfair interpretation to say that the timeline is clear because it's not. The, Henry also talks about the fact that you have an undisclosed undercover informant who is operating in a capacity who is ostensibly no more than a fellow inmate. That's exactly the issue that we had with Commodore. He was acting under instructions as a paid informant. And he'd had an agreement since 2013. There was an inducement here because he was doing this to try and get himself out of jail quicker, which he did. He was out in July of last year. So it clearly worked and he did receive a benefit. Thank you. All right, thank you, Ms. Town. Your case is under submission. Last case for today.